# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 21-508


**JOSEPH R. BROUSSARD AND ROSE BROUSSARD**

**VERSUS**

**AVE MARIA ROSARY & CENACLE, INC., ET AL**


**\*\*\*\*\*\*\*\*\*\***
ON APPEAL FROM THE
27TH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 15-C-0282-C
HONORABLE GERARD CASWELL, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## JONATHAN W. PERRY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and Jonathan W. Perry, Judges.


**AFFIRMED IN PART; REVERSED IN PART;**
**AND REMANDED.**

Gloria A. Angus
Angus Law Firm, LLC
627 E. Vine Street
Opelousas, Louisiana 70570
(337) 948-8800
**COUNSEL FOR PLAINTIFFS-APPELLANTS**:
    Joseph Broussard and Rose Broussard

Bruce Gaudin
Attorney at Law
100 West Bellevue
Opelousas, Louisiana 70570
(337) 948-3818
**COUNSEL FOR DEFENDANTS-APPELLEES**:
    Ave Maria Rosary & Cenacle, Inc., et al

**PERRY, Judge.**

This case involves a suit originally filed by Joseph and Rose Broussard (hereinafter "Joseph" and "Rose," individually, and collectively "the Broussards") to revoke a donation of a one-acre parcel of immovable property to Ave Maria Rosary & Cenacle, Inc. ("Ave Maria") for ingratitude.[1]  Several years after filing suit, Joseph was interdicted, and his wife, Rose, was appointed as his curatrix.  Rose, individually and as curatrix of Joseph, now appeals[2] the dismissal of their claims on Ave Maria's motion for partial summary judgment and the trial court ruling that the curatrix cannot maintain an action to revoke the donation made by her interdicted husband.[3]  After conducting a de novo review, we affirm in part, reverse in part, and remand.

## FACTS

This case focuses on the donation of a one-acre parcel of property by Joseph and Rose to Ave Maria on November 1, 2000.  The property is described as follows:

> A certain tract or parcel of land, together with all buildings and improvements thereon, and all rights, ways, privileges, servitudes, appurtenances, and advantages thereunto belonging or in anywise appertaining, situated in Section 63, Township Five South (T-5-S), Range Three East (R-3-E), St. Landry Parish, Louisiana, containing ONE (1) ACRE, and more particularly identified as TRACT "A", as per Plat of Survey prepared by Nason A. LaJack, Jr., dated August 10, 2000, a copy being attached hereto.  Said tract being more particularly described as commencing at the southwest corner of a large tract owned by Joseph R. Broussard containing 24 acres identified as Lot 1, thence in a northeasterly direction along La. Highway 103 Right of Way a distance of Two Hundred Seventy-seven and 46/100 (277.46') feet to the Point of Beginning, thence continuing in a Northeasterly direction

---

[1] In connection with her initial pleadings, Rose also sought damages from Ave Maria and several board members.  Ultimately, those claims and those other defendants were dismissed.  What remains is a suit to revoke the donation to Ave Maria and nullify it as not having been executed as an authentic act.

[2] We will later discuss Ave Maria's objection to this appeal on procedural grounds.

[3] Consolidated with this suit in the trial court is a separate action instituted by Sheila Broussard Guidry ("Sheila"), the daughter of Joseph and Rose, against Ave Maria.  In that lawsuit, Sheila initiated an action to recover the one-acre tract which her parents donated to Ave Maria.  We will address Sheila's appeal under Docket No. 21-508 in a separate opinion.

along said right of way a distance of One Hundred Ninety-one and 97/100 (191.97') feet to a point, thence in an easterly or southeasterly direction a distance of Two Hundred Twenty-six and 92/100 (226.92') feet to a point, thence in a southerly or southwesterly direction a distance of One Hundred Ninety-one and 97/100 (191.97') feet to a point, thence in a westerly or northwesterly direction a distance of Two Hundred Twenty-six and 92/100 (226.92') feet to the point of beginning. Said tract being bounded, now or formerly, as follows: North, South and East by Joseph R. Broussard, and West by La. Highway 103.

Being a portion of the same property that Joseph B. Broussard acquired in part in the Estate of Renee Broussard and Mable Felix Broussard, Probate Docket No. 95P1017B, in particular in Judgment of Possession dated March 28, 1995, recorded under Original Act No. 790828, in Conveyance Book D-35, page 332; and that Joseph R Broussard and Rose Kilchrist Broussard acquired from Joseph Cormier in Act of Cash Sale dated April 12, 1995, recorded under Original Act No. 791300, in Conveyance Book D-35, page 845, of the records of St. Landry Parish, Louisiana.

Further stipulated in the donation is a provision stating that if the property is "no longer used for religious purposes and this corporation is dissolved, the land shall revert to donors, JOSEPH BROUSSARD and ROSE KILCHRIST BROUSSARD, and/or their descendants in full ownership." Fay Perry Smithey and Joseph, respectively, the president and vice-president of Ave Maria, accepted this donation on behalf of Ave Maria.

On May 8, 2009, Joseph and Rose executed an act of exchange with Ave Maria. In the exchange, they conveyed a strip of property of 0.114 acres which abutted the eastern side of the one-acre tract they had earlier donated to Ave Maria. And, in return, Ave Maria conveyed to Joseph and Rose a strip of property of 0.114 acres which was within and along the southern side of the one-acre tract earlier donated to it. These properties were more fully described in a plat of survey by John A. Miller, PLS, dated May 8, 2009, and was attached to the act of exchange.[4]

---

[4] In their amended and supplemental petition dated November 15, 2015, Joseph and Rose admit that they were only usufructuaries of the exchanged property. In its brief to this court and in argument in the trial court, Ave Maria acknowledges this fact. Because of this, Ave Maria sued

On November 5, 2013, Joseph and Rose unilaterally revoked the donation they had made to Ave Maria and recorded the act of revocation in the conveyance records of St. Landry Parish. Ingratitude was the reason stated in the act of revocation. In response, Ave Maria filed suit, contesting the act of revocation. Joseph and Rose then filed suit seeking to evict Ave Maria from the donated property. The two lawsuits were consolidated.[5]

As shown in the judgment dated October 22, 2014, Ave Maria moved for summary judgment in the suit which sought to nullify the act of revocation filed by the Broussards. After considering the motion for summary judgment, the evidence, and the argument of counsel, the trial court granted Ave Maria's motion. In its judgment, the trial court nullified the act of revocation, and recognized Ave Maria as the owner of the one-acre tract of land, together with all buildings and improvements thereon situated. Joseph and Rose also withdrew their eviction suit. No motion for new trial was filed and no appeal was sought.

Subsequently, on January 20, 2015, Joseph and Rose filed a petition to nullify and revoke the 2000 donation they made to Ave Maria. Among other things,[6] Joseph and Rose asked that their donation be revoked for Ave Maria's ingratitude.[7] In

Joseph and Rose for damages and attorney fees. Ultimately, Ave Maria withdrew its claim for damages but its claim for attorney fees survives.

[5] These lawsuits are more particularly identified as having been filed in the 27th Judicial District Court, St. Landry Parish, Louisiana. They are as follows: Docket No. 14-C-0177-B, *Ave Maria Rosary & Cenacle v. Joseph R. Broussard and Rose Kilchrist Broussard;* and Docket No. 14-C-0190-A, *Joseph R. Broussard and Rose Kilchrist Broussard v. Ave Maria Rosary & Cenacle.* The act of revocation and the judgment are part of the record now before us. However, the record of these lawsuits was not entered into the record of this matter.

[6] The Broussards also sought an award of monetary damages, attorney fees, and the assessment of costs to Ave Maria. None of these matters are before us.

[7] Their allegations of ingratitude included: (1) on January 19, 2014, Ave Maria had Sheila, the Broussards' daughter, arrested for criminal mischief and this arrest occurred in their presence; (2) in early March 2014, Ave Maria installed gutters on structures on the donated property that increased water flow onto the Broussards' adjoining property; (3) in late March 2014, the increased flow of water onto their property caused the Broussards to clean their private ditch and dam it to block the increased water flow; (4) on April 1, 2014, corporate counsel for Ave Maria sent a letter to them demanding that they remove the dam that blocked their private ditch; (4) Ave Maria

supplemental and amending petitions filed on November 17, 2015, and June 7, 2018, Joseph and Rose amplified the allegations made in their original petition, made more detailed allegations of purported ingratitude exhibited by various members of Ave Maria, and further asserted that the ownership of the property they donated in 2000 should be returned to them because undue influence made upon them affected their donative intent.

On April 5, 2019, during the pendency of this litigation, Joseph developed dementia and a judgment of full interdiction was entered. Rose was appointed curatrix and Joseph's daughters, Sheila and Vanessa, were appointed undercurators. Subsequently, Rose, as Joseph's curatrix, sought permission from the trial court to be substituted as plaintiff in Joseph's stead.

In addition to having answered the Broussards' original and supplemental and amending petitions, Ave Maria filed peremptory exceptions of no cause of action, no right of action, prescription, and further filed a motion for partial summary judgment on the issue of the validity of the donation inter vivos executed by Joseph and Rose to Ave Maria. After hearing oral argument and considering various evidentiary filings, the trial court: (1) denied the peremptory exception of no cause

installed surveillance cameras on the donated property which were placed so as to invade the privacy of the Broussards; and (5) Ave Maria complained to the St. Landry Parish Code Enforcement Division regarding overgrown grass on the Broussards' property.

The Broussards also asked that Ave Maria's acceptance of the 2000 donation inter vivos be nullified because the corporation failed to provide a resolution authorizing its acceptance of the donation. However, a judgment dated February 22, 2016, states as follows:

> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Exceptions of No Right of Action and Prescription of the claim by the Plaintiffs [Joseph R. Broussard and Rose K. Broussard] that the Intervivos Donation of the property upon which the Ave Maria shrine sits was not validly accepted by the Board of Directors of Ave Maria are GRANTED, based upon the Stipulation of the parties.

> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Exception of No Right of Action for the Plaintiffs [Joseph R. Broussard and Rose K. Broussard] to assert any claims that are strictly personal to their daughter, Sheila Guidry, is GRANTED, based upon the Stipulation of the parties.

of action filed by the Broussards,[8] excepting to the motion for partial summary judgment filed by Ave Maria as not being a proper procedural response to the motion; (2) granted Ave Maria's motion for partial summary judgment, finding no genuine issue of material fact relative to the validity of the one-acre donation to Ave Maria made on November 1, 2000, as said donation was valid and involved the separate property of Joseph; (3) rejected the claim made by Rose to revoke the donation to Ave Maria as there was no genuine issue of material fact that the property in question was the separate property of her husband at the time of the donation to Ave Maria; (4) due to the interdiction of Joseph on April 5, 2019, and pursuant to La.Civ.Code art. 1482, Joseph was prohibited from revoking the donation made to Ave Maria on November 1, 2000, and dismissed that claim; and, (5) decreed that as a result of Joseph's interdiction, Rose as curatrix cannot maintain an action to revoke a donation made by Joseph, and accordingly, any such claim by the curatrix was dismissed.

## ASSIGNMENTS OF ERROR

The Broussards contend that the trial court erred: (1) as a matter of law in finding that Rose, the curatrix of Joseph, cannot substitute as party-plaintiff on behalf of her husband who filed suit to revoke the donation to Ave Maria five years before he was interdicted; (2) in making a finding of fact in a partial summary judgment proceeding that the one-acre parcel of property donated to Ave Maria by Rose and Joseph was Joseph's separate property; (3) in making a fact finding as to the validity of the donation of the one-acre tract of land as there are material issues

---

[8] We observe that although the trial court judgment would later reference this as a peremptory exception of no cause of action, the Broussards actually filed a peremptory exception of no right of action excepting to Ave Maria's motion for partial summary judgment. The parties argued it as such in the hearing, and the trial court likewise referenced it as such in the transcript of the hearing.

of fact as to whether the donation was done by authentic act before a notary and two witnesses; and (4) in issuing a mutual preliminary injunction without consent of the parties and without a hearing on the motion.

## OBJECTION TO THE APPEAL

In its brief to this court, Ave Maria contends the trial court should not have signed the order designating the record. It contends that the motion to designate the record was untimely and Joseph and Rose failed to include a concise statement of the points upon which they intended to rely as required by La.Code Civ.P. art. 2129.

Designation of the record is addressed in La.Code Civ.P. arts. 2128, 2129, and 2132, and Uniform Rules—Courts of Appeal, Rule 2–1.17.[9] Louisiana Code of Civil Procedure Article 2128 provides, in pertinent part (emphasis added):

> The form and content of the record on appeal shall be in accordance with the rules of the appellate court, except as provided in the constitution and as provided in Article 2128.1. However, *within three days, exclusive of holidays, after taking the appeal* the appellant may designate in a writing filed with the trial court such portions of the record which he desires to constitute the record on appeal. Within five days, exclusive of holidays, after service of a copy of this designation on the other party, that party may also designate in a writing filed with the trial court such other portions of the record as he considers necessary. . . . [A] party or the trial court may cause to be filed thereafter any omitted portion of the record as a supplemental record. When no designation is made, the record shall be a transcript of all the proceedings as well as all documents filed in the trial court.

Louisiana Code of Civil Procedure Article 2129 states:

> An assignment of errors is not necessary in any appeal. Where the appellant designates only portions of the record as the record on appeal, he must serve with his designation a concise statement of the points on which he intends to rely, and the appeal shall be limited to those points.

Louisiana Code of Civil Procedure Article 2132 states:

---

[9] Uniform Rules—Courts of Appeal, Rule 2–1.17 simply states, "Notwithstanding the foregoing requirements, the parties may designate, in writing, portions of the record to constitute the record in a Court of Appeal."

A record on appeal which is incorrect or contains misstatements, irregularities or information, or which omits a material part of the trial record, may be corrected even after the record is transmitted to the appellate court, by the parties by stipulation, by the trial court or by the order of the appellate court. All other questions as to the content and form of the record shall be presented to the appellate court.

In the present case, the record shows that Rose, individually and as Joseph's curatrix, was granted an appeal on June 16, 2021, and she did not first seek to designate the record until July 13, 2021.[10] Our examination of the record also shows that she did not designate the record until July 20, 2021, and at that time she did not provide a concise statement of the points on which she intended to rely. On these facts alone it is clear that Rose failed to comply with La.Code Civ.P. arts. 2128 and 2129.

In our review of Ave Maria's objections, we do not find that it has shown that Rose's failures have prejudiced it or that the appellate record is insufficient to address the assignments of error delineated in her brief to this court, or that transcription of the entire record is warranted. It is also evident that Rose's appeal has been limited to those assignments of error, that her brief was provided to Ave Maria, that the points relied upon are addressed in the brief, and that the designated record is sufficient for us to review them. *See Shop Rite, Inc. v. Gardiner*, 21-172 (La.App. 3 Cir. 4/14/21) (unpublished opinion)(holding that service of a concise statement of point or assignment of error moots the necessity to dismiss the appeal);

_____

[10] The record shows that the trial court extended the time within which Rose could designate the record; it is also shown that Rose's designation of the record was made within the time limitations set by the trial court. Our review of La.Code Civ.P. art. 2088, which addresses the divestiture of the trial court of jurisdiction, does not enumerate that the trial court has authority to extend the time within which Rose had to request the designation of the record. Likewise, we observe that the trial court granted two motions to extend the return day of the appeal. Louisiana Code of Civil Procedure Article 2125 states, that "the trial court may grant only one extension of the return day" and "[s]ubsequent extensions of the return day may be granted by the appellate court for sufficient cause or at the request of the court reporter as provided in Article 2127.2." However, because of our resolution of the issues involving Rose's failure to follow the rules of procedure regarding the designation of the record, these two additional problems do not affect our disposition of this matter.

*compare Bonner v. Goldberg*, 11-768 (La.App. 4 Cir. 11/2/11), 76 So.3d 1284 (the exceptions complained of on appeal were not included in the designated record; thus, the appellate court had no evidentiary record to review). "The effect to be given to an appellant's failure to comply with the procedure taking a limited appeal is within the sound discretion of the Court of Appeal." *Martin v. G & A Ltd.*, 583 So.2d 611, 613 (La.App. 3 Cir. 1991) (quoting *Miller v. Miller*, 405 So.2d 534, 535 (La.App. 3 Cir. 1981)). Thus, based upon the facts now before us, we find no merit to Ave Maria's objection to Rose's appeal.

Moreover, to the extent that Ave Maria's argument may be considered an attempt to have this court dismiss the appeal, we hereby deny the motion to dismiss as untimely filed. Louisiana Code of Civil Procedure Article 2161 states that a motion to dismiss an appeal because of "any irregularity, error, or defect which is imputable to the appellant must be filed within three days, exclusive of holidays, of the return day or the date on which the record on appeal is lodged in the appellant court, whichever is later." The appeal record was lodged on August 11, 2021. Thus, we find Ave Maria's argument contained in its appellate brief filed on November 12, 2021, is considered untimely.

**INTERDICTION AND REVOCATION**

When this matter was argued in the trial court, the parties were allowed additional time to brief and argue whether Joseph's claim to revoke the donation could proceed after he was fully interdicted. Relying on La.Civ.Code art. 1482(B), the trial court dismissed Joseph's claim, finding that "[a] full interdict lacks capacity to make or revoke a donation *inter vivos*[.]" Rose, as Joseph's curatrix, has appealed, contending the trial court erred as a matter of law in reaching this conclusion. We agree with Rose's argument that the trial court erred in this regard.

The issue presented is solely a question of law, requiring the interpretation of a statute. Thus, our review is *de novo*. *Louisiana Mun. Ass'n v. State*, 04-227 (La. 1/19/05), 893 So.2d 809; *Hartman v. St. Bernard Par. Fire Dep't & Fara*, 20-693 (La. 3/24/21), 315 So.3d 823.

"The starting point for interpretation of any statute is the language of the statute itself." *State v. Williams*, 10-1514, p. 6 (La. 3/15/11), 60 So.3d 1189, 1192 (quoting *Cat's Meow v. City of New Orleans*, 98-601, p. 15 (La. 10/20/98), 720 So.2d 1186, 1198). "[A] fundamental principle of statutory interpretation is that when a 'law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the intent of the legislature.' La.Civ.Code art. 9." *Harrah's Bossier City Inv. Co., LLC v. Bridges,* 09-1916, p. 11 (La. 5/11/10), 41 So.3d 438, 446-47.

As explained in *M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 07-2371, pp. 12-13 (La. 7/1/08), 998 So.2d 16, 26-27 (internal citations omitted):

> The function of statutory interpretation and the construction given to legislative acts rests with the judicial branch of the government. The rules of statutory construction are designed to ascertain and enforce the intent of the Legislature. Legislation is the solemn expression of legislative will and, thus, the interpretation of legislation is primarily the search for the legislative intent. We have often noted the paramount consideration in statutory interpretation is ascertainment of the legislative intent and the reason or reasons which prompted the Legislature to enact the law.
>
> The starting point in the interpretation of any statute is the language of the statute itself. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La.Civ.Code art. 9.

Moreover, "[t]he words of a law must be given their generally prevailing meaning." La.Civ.Code art. 11.

When, on the other hand, a statute is not clear and unambiguous, or its application leads to absurd consequences, we rely on secondary rules of statutory interpretation to discern the meaning of the statute at issue. *See Red Stick Studio Dev., L.L.C. v. State ex rel. Dep't of Econ. Dev.*, 10-0193, p. 10 (La. 1/19/11), 56 So.3d 181, 187-88 (quotation omitted). In such cases, the statute "must be interpreted as having the meaning that best conforms to the purpose of the law. Moreover, when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole." *Id.*

*Borcik v. Crosby Tugs, L.L.C.*, 16-1372, pp. 4-5 (La. 5/3/17), 222 So.3d 672, 675.

Furthermore, the laws of statutory construction require that "laws on the same subject matter be interpreted in reference to each other. La.Civ.Code art. 13." *Louisiana Mun. Ass'n*, 893 So.2d at 837. "[W]here it is possible, courts have a duty in the interpretation of a statute to adopt a construction which harmonizes and reconciles it with other provisions dealing with the same subject matter." *Hollingsworth v. City of Minden,* 01-2658, p. 4 (La. 6/21/02), 828 So.2d 514, 517.

From the outset, we note that the trial court and Ave Maria focus on La.Civ.Code art. 1482(B). Although we agree that it plays a part in our determination, we find it equally important to consider it in conjunction with other related codal provisions.

Louisiana Civil Code Article 1470 provides that "[a]ll persons have capacity to make and receive donations inter vivos, . . . except as expressly provided by law." Addressing capacity more particularly, La.Civ.Code art. 1482(B) states, "A full interdict lacks capacity to make or revoke a donation *inter vivos* or disposition *mortis causa*." The question now before us is whether a donor, who is not interdicted when he commences an action for revocation, loses that capacity if he is subsequently interdicted. For the following reasons, we find that under the facts now before us Joseph's action for revocation did not terminate with his interdiction.

Louisiana Civil Code Article 1556 establishes revocation as an exception to the general rule established in La.Civ.Code art. 1468 that in a donation inter vivos

10

the donor "gratuitously divests himself, at present and irrevocably, of the thing given" to the donee. How a donation inter vivos is revoked, though not specifically delineated, may be discerned by reading La.Civ.Code art. 1558 (emphasis added) which states, in part, that "[a]n **action** of revocation for ingratitude shall be brought within one year from the day the donor knew or should have known of the act of ingratitude." *Compare Scudder v. Howe*, 11 So.2d 824 (La.1892) and *Atkins v. Johnson*, 35 So.2d 16 (La.1948) (recognizing that the donor and donee have the authority to rescind or modify the donation by mutual consent). Louisiana Code of Civil Procedure Article 421 states that "[a] civil action is a demand for the enforcement of a legal right[,] and "[i]t is commenced by the filing of a pleading presenting the demand to a court of competent jurisdiction." Thus, it may be deduced that an action for revocation for ingratitude is commenced when a donor files a petition for revocation of the donation inter vivos.

"Capacity to donate *inter vivos* must exist at the time the donor makes the donation." La.Civ.Code art. 1471. As noted in Revision Comment (b) to La.Civ.Code art. 1471, it is stated that "the determination of capacity of the donor is as of when he 'makes' the donation, and if he subsequently becomes incapacitated before the donee accepts, that will not prevent the donation from being effective." We find the same analysis of donor capacity operative at the time of donation is equally applicable to donor capacity at the time of revocation. It is undisputed that Joseph was not interdicted when he commenced this action for revocation. Thus, we find that Joseph had the capacity to seek revocation of the donation to Ave Maria when he commenced his revocation action. Therefore, it logically follows that Rose,

11

the curatrix of the interdict, may pursue the action for revocation on Joseph's behalf.[11]

In reaching that conclusion, we further find analogous support from the provisions of La.Civ.Code art. 1558, which provides as follows:

> An action of revocation for ingratitude shall be brought within one year from the day the donor knew or should have known of the act of ingratitude.
>
> If the donor dies before the expiration of that time, the action for revocation may be brought by the successors of the donor, but only within the time remaining, or if the donor died without knowing or having reason to know of the act, then within one year of the death of the donor.
>
> If the action has already been brought by the donor, his successors may pursue it.
>
> If the donee is deceased, the action for revocation may be brought against his successors.

Under these provisions, the action for revocation may be instituted by the donor's successors, if the donor had not yet filed suit, or the donor's successors may pursue it if the donor had filed suit. Clearly, this supports our conclusion that Rose, the curatrix of Joseph, can pursue the revocation of the donation to Ave Maria on behalf of the interdict, Joseph.[12]

For the foregoing reasons, we reverse the judgment of the trial court which held that Rose as curatrix could not maintain an action to revoke a donation made by her husband, Joseph, to Ave Maria on the grounds that Joseph was prohibited

---

[11] The relationship between an interdict and his curator or continuing tutor is the same as that between a minor and his tutor, with respect to the person and property of the interdict. La.R.S. 9:1032. A curatrix may institute and prosecute an action to enforce judicially a right of the interdict. *See* La.Code Civ.P. art. 4073(1). More particularly, a curatrix may file an action to annul a donation inter vivos made by an interdict. *Leveige v. Greenhouse*, 194 So.2d 475 (La.App. 3 Cir. 1967).

[12] In its brief to this court, Ave Maria argues that Rose never sought permission to pursue Joseph's claim of revocation. Such contention would have best been presented as a dilatory exception. Not having found such an exception in the record, we find Ave Maria has waived this dilatory exception.

from revoking the donation under the provisions of La.Civ.Code art. 1482. Having resolved this preliminary matter, we now turn to the assignments of error raised by Rose, individually and as Joseph's curatrix.

## SUMMARY JUDGMENT

In their second and third assignments of error, the Broussards argue the trial court erred in granting a partial summary judgment when it determined that the property donated to Ave Maria was the separate property of Joseph; and the 2000 act of donation to Ave Maria was an authentic act properly signed before two witnesses.

"A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact[.]" *N. Am. Fire & Cas. Co. v. State Farm Mut. Auto. Ins. Co.*, 03-300, p. 3 (La.App. 3 Cir. 10/1/03), 856 So.2d 1233, 1235, *writ denied*, 03-3334 (La. 2/13/04), 867 So.2d 694. "A summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case as to that party or parties." La.Code Civ.P. art. 966(E). Appellate courts review motions for summary judgment de novo, using the same criteria as the trial court to determine whether summary judgment is appropriate. *Dunn v. City of Kenner*, 15-1175 (La. 1/27/16), 187 So.3d 404. "The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action[.]" La.Code Civ.P. art. 966(A)(2). "The procedure is favored and shall be construed to accomplish these ends." *Id.* Pursuant to La.Code Civ.P. art. 966(A)(3), a court will grant a motion for summary judgment "if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." *See also Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So.2d 880.

In *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751 (citations omitted), the Louisiana Supreme Court explained:

> A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. "[F]acts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." Simply put, a "material" fact is one that would matter on the trial on the merits. Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits.

From the outset, the Broussards argue that in Ave Maria's motion for partial summary judgment, it did not ask the trial court to determine that the donated property to Ave Maria was Joseph's separate property. Accordingly, they contend the trial court's ruling on this issue was improper.

Louisiana Code of Civil Procedure Article 966(F) makes clear that "[a] summary judgment may be rendered or affirmed only as to those issues set forth in the motion under consideration by the court at that time." *See also Leet v. Hosp. Serv. Dist. No. 1 of E. Baton Rouge Par.*, 18-1148 (La.App. 1 Cir. 2/28/19), 274 So.3d 583. As held by the Louisiana Supreme Court, a "court cannot render a motion for summary judgment dismissing a claim which has not been challenged by the pleading." *Hoover v Hoover*, 01-2200, p. 8 (La. 4/3/02), 813 So.2d 329, 334.

Under La.Code Civ.P. art. 966(D)(2), "[a]ny objection to a document shall be raised in a timely filed opposition or reply memorandum." Comment (k) of the Revision Comments 2015 to Article 966 states that this "provision changes prior law by specifically removing the motion to strike as a means of raising an objection to a document offered by an adverse party in support of or in opposition to a motion for summary judgment and does not allow a party to file that motion." "The intent of [La.Code Civ.P.] art. 966(D)(2) was to make it mandatory that any objection to a document filed in support of or in opposition to a motion for summary judgment

must be objected to in a timely filed opposition or reply memorandum and not in a 'motion to strike' or other pleadings." *Ramus v. KCJS Trucking, LLC*, 19-041 p. 5 (La.App. 1 Cir. 9/27/19), 288 So.3d 869, 874; *Adolph v. Lighthouse Prop. Ins. Corp.*, 16-1275 (La.App. 1 Cir. 9/8/17), 227 So.3d 316.

The purpose of requiring that an opposition memorandum be served on the mover not less than fifteen days before the hearing on a motion for summary judgment is to allow both the court and the mover sufficient time to narrow the issues in dispute and prepare for argument at the hearing. *Blackwell v. Waste Mgmt. of Louisiana, LLC*, 14-560 (La.App. 3 Cir. 11/5/14), 150 So.3d 664; *Mahoney v. East Carroll Par. Police Jury*, 47,494 (La.App. 2 Cir. 9/26/12), 105 So.3d 144, *writ denied*, 12-2684 (La.2/8/13), 108 So.3d 88.

In the present case, the record shows that although there is no mention in the motion for partial summary judgment addressing whether the donated property was Joseph's separate property, Ave Maria's memorandum clearly raises that issue and discusses it at length. Our review of the Broussards' memorandum in opposition to Ave Maria's motion for partial summary judgment indicates no objection to the inclusion of this argument on the part of Ave Maria for the first time in Ave Maria's supporting memorandum. Furthermore, the Broussards' opposition memorandum provides a detailed argument as to why the trial court issue should reject this contention because there were genuine issues of material fact sufficient to deny on this question.

At the hearing on the motion, the trial court was presented arguments from Ave Maria as to why it thought there was no genuine issue of material fact that the property was Joseph's separate property and the Broussards, particularly relying on Rose's affidavit, contended otherwise. Having found no opposition in conformity with the procedure specified in La.Code Civ.P. art. 966(D)(2) to Ave Maria's failure

15

to include this issue in its motion, we find the Broussards waived their right to challenge Ave Maria's presentation of this issue in its motion for partial summary judgment. Therefore, we find the trial court did not err when it considered it.

Notwithstanding, in our de novo review we must determine whether the trial court erred in finding there were no genuine issues of material fact that the property donated to Ave Maria was Joseph's separate property. For reasons which follow, we find there are genuine issues of material fact which preclude the issuance of a partial summary judgment on this question.

Relying on the chain of title, Ave Maria contends the record establishes that the one-acre tract donated to it was Joseph's separate property. Referencing the chain of title and Rose's affidavit, the Broussards argue there are genuine issues of material fact that preclude the issuance of a partial summary judgment as to this issue.

Without detailing the full property descriptions and all elements of the chain of title,[13] Ave Maria points out that the one-acre parcel donated to it was acquired by Joseph as part of a larger twenty-five acre tract, in the following manner: (1) the donation of a one-acre tract to Joseph by his parents, René Broussard ("René") and Mable Felix Broussard ("Mable"), on September 12, 1968;[14] (2) the sale of the same one-acre parcel to Joseph and Rose by René and Mable on May 27, 1969, for the sum of $557.00; (3) a three-fourths interest in twenty-five acres by judgment of possession dated March 24, 1995, in the Successions of René and Mable; and (4) a one-quarter interest in the twenty-five acres by cash sale dated April 12, 1995, from

---

[13] For a more complete recitation of the property descriptions, reference may be made to the companion opinion rendered this date in No. 21-507, *Sheila Broussard Guidry v. Ave Maria Rosary & Cenacle, Inc.*

[14] Joseph's marital status was not provided in this donation, and Joseph did not appear accepting the donation of the immovable property.

Joseph's half-brother, Joseph Cormier ("Cormier"), as Joseph's separate property[15] for the sum of $8,700.00.

In addition to those facts, the record also shows other recorded property transfers that relate to the property from which the one-acre parcel donated to Ave Maria is derived. In 1988, after Joseph's father, René, died, his mother, Mable, executed a remunerative and onerous donation to Joseph of her interest in the remaining twenty-four acres. Lastly, on May 8, 1995, Joseph donated eighteen acres from the original twenty-five acres[16] to his daughters, Sheila and Vanessa Ann Broussard Walker ("Vanessa"). Ultimately, Vanessa would divest her interest in favor of Sheila.

After considering the record evidence, we conclude that partial summary judgment was not appropriate. Rose's affidavit references the cash sale to her and Joseph from René and Mable in 1969 and the 1995 acquisition from Cormier, stating:

> My husband and I were both employed for many years, before, during and after our property purchases in 1969 and in April 1995 and we have always shared a joint checking account and shared joint savings accounts. We did not have separate funds accounts for paying bills or making purchases. Everything was together, decisions were made together, funds were together and we have remained married together for nearly 60 years.
>
> The cash sale of April 1995 was purchased with community funds as community property, as indicated on my Last Will and Testament signed on May 8, 1995 and as indicated on my husband's Last Will and Testament also signed on May 8, 1995 referencing our purchase of an interest in the 6 undivided acres of community property in both wills, which were filed and recorded in St. Landry Parish public records on May 9, 1995.

---

[15] At the time of this sale, Joseph is identified as being "married to and living with ROSE KILCHRIST BROUSSARD[.]" No mention was made in the cash sale of the source of the funds used for the purchase, and Rose did not join as a signatory to acknowledge the acquisition was made by the separate estate of Joseph.

[16] The property description of the donated eighteen acres references the original plat of survey which depicted a twenty-five acre tract, and describes the donated property as having the identical boundaries as that of the twenty-five acre tract.

In her recorded notarized last will and testament (emphasis added),[17] Rose made the following bequest:

I will and/or confirm to by [sic] beloved husband JOSEPH R. BROUSSARD, the use and usufruct of all property of which I may possess at the time of my death, and to be enjoyed by him during his lifetime and widowhood and without necessity of furnishing bond or security therefore, more particularly the following described property, to-wit:

1. A certain tract or parcel of land, together with all buildings and improvements thereon, situated in the Plaisance Neighborhood, St. Landry Parish, Louisiana, containing six (6) acres, more or less, located in Section 63, T-5-S, R-3-E, La. Mer., and bounded, now or formerly as follows: Northeast by Andre[.] H. David; southeast and southwest by Malvera Kidder; and Northwest by Public Road. Said tract being more particularly identified as part of Lot No. One (1) of Plat of survey made by F. S. Robert, C.E., dated August 22, 1949, and recorded in Plat Book 3, Page 33 of the records of the Recorder's Office of St. Landry Parish, Louisiana.

Being the same property Rene Broussard and Mable Felix Broussard acquired from Jeffery L. David, Sr., on January 15, 1953, under Original Act No. 327633 in Conveyance Book Y-9, page 385 of the records of the Recorder's Office of St. Landry Parish, Louisiana.

*Being the same property that was acquired as community property by Joseph R. Broussard by act of Cash Sale dated April 12, 1995* recorded in Conveyance Book D-35, page 845 thru 846, in the office of the Recorder, St. Landry Parish, Louisiana.

2. One (1) acre of land situated in Section, Sixty-Three, Township Five South, Range Three-East (Sec. 63, T-5-S, R-3-E), St. Landry Parish, Louisiana.

This is part of the community of acquets and gains of Vendors. Said property measures One Hundred Ninety-One and Ninety One Hundredths (191.91) in width and Two Hundred Twenty-seven (227')feet in

---

[17] Joseph made a similar last will and testament. However, we note the following differences: (a) he only referenced the property described as (1) in Rose's last will and testament; and (b) his description of (1) did not include language indicating that it had been acquired by him as community property.

length. Said property is more fully described by the map of survey attached hereto and made a part hereof. This property is bounded now or formerly as follows: On the North, South and East by the property of Vendors and on the West by Louisiana Highway Number 103. Being the same property acquired by act of Cash Sale on the 27th day of May, 1969 of the records of the Recorder's Office of St. Landry Parish, Louisiana.

These supporting documents question whether the property was separate or community, and this becomes especially so when we consider that Rose did not join in the sale from Cormier to acknowledge that this purchase was made as Joseph's separate property. At this point, it is equally possible that Joseph and Rose own one acre, and Joseph himself owns twenty-four acres or Joseph owns an undivided three-fourths of the twenty-four acres as separate property and Joseph and Rose own the remaining one-fourth in community. For these reasons and on de novo review, we reverse the trial court's grant of partial summary judgment as to the legal characterization of the property.

The Broussards next contend that the trial court erred when it found the act of donation to Ave Maria was validly perfected before a notary and two witnesses. For the following reasons, we find there are genuine issues of material fact that should have precluded the issuance of a partial motion for summary judgment.

The record includes the deposition testimony of Charles F. Boagni, III, the attorney who notarized the donation from Joseph and Rose to Ave Maria in 2000. Although he had no independent recollection of the transaction, he stated, "I can tell you that the donation would have been signed by Joseph and Rose Broussard in my presence and in the presence of two witnesses. I only do donations that way." Mr. Boagni stated that as part of his usual procedure he would have explained the document and answered any questions, and then he would have watched them sign the document. He further stated that the two witnesses to the donation were Judy

Reiners and Velma Fontenot. Later, in an affidavit dated September 5, 2019, Mr. Boagni stated:

> Appearer is aware that the Broussards have questioned whether the [donation inter vivos] is an authentic act and I herein testify that all donations in this office are done in the presence of two (2) witnesses and a notary. All the parties do not have to sign together, but when they do sign it would be in the presence of two witnesses and a notary.

The record also contains the affidavit of Rose who paints a different picture.

In her affidavit, Rose stated:

> Joseph Broussard and I signed documents together at the Attorney Charles F. Boagni III's office in front of him and in front of Fay Smithey, and this was the very first time on November 1, 2000, that Joseph and I had ever met this attorney, to sign the land donation document, where only the 4 of us (Charles F. Boagni III, Fay Perry Smithey, Joseph Broussard and myself, Rose Broussard) were present. There were no other people present in the room with us.

> The location was at the Charles F. Boagni III law office when signing the November 1st 2000 Act of Donation, donating the 1 acre when Joseph and I both signed the document as donors and at the same time, Joseph Broussard signed as Ave Maria Rosary and Cenacle Incorporated's duly elected Vice President, jointly authorized agent of the corporation, who jointly signed the document with the duly elected President and jointly authorized agent of the corporation, Fay Perry Smithey[,] as donee accepting the 1 acre land donation for the Ave Maria Rosary and Cenacle Inc.

> No other witnesses were present when I signed the November 1st 2000 document regarding the 1 acre[.]

In *Tillman v. Eldridge*, 44,460, pp. 13-14 (La.App. 2 Cir. 7/15/09), 17 So.3d 69, 78 (citation omitted), the court stated:

> Even though [the] summary judgment [procedure] is now favored, it is not a substitute for trial on the merits, and it is inappropriate for judicial determination of subjective facts, such as motive, intent, good faith or knowledge that call for credibility evaluations and the weighing of the testimony. In deciding a motion for summary judgment, the court must assume that all of the affiants are credible.

Moreover, in *Smith*, 639 So.2d at 752, the court stated:

> [S]ummary judgment may be granted when reasonable minds must inevitably conclude that the mover is entitled to judgment on the facts before the court. *Sanders [v. Hercules Sheet Metal, Inc.]*, 385 So.2d

[772] at 775 [La.1980]; *Chaisson v. Domingue,* 372 So.2d 1225, 1227 (La.1979); *Cates v. Beauregard Electric Cooperative, Inc.,* 328 So.2d 367, 370 (La.1976), *cert. denied,* 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976); *see also Johnson v. Edmonston,* 383 So.2d 1277, 1281 (La.App. 1st Cir.1980). Likewise, summary judgment is appropriate when all the relevant facts are marshalled before the court, the marshalled facts are undisputed, and the only issue is the ultimate conclusion to be drawn from those facts.

Applying the well-established jurisprudence shown above, we find upon de novo review that Ave Maria's motion for summary judgment should have been denied. The evidence detailed above involved disputed facts, call for credibility evaluations, and the weighing of testimony. As such, summary judgment is not appropriate.

## PRELIMINARY INJUNCTION

Rose next takes issue with the trial court's issuance of mutual preliminary injunctions.[18] She contends that the trial court abused its discretion when it failed to hold a hearing before it issued the mutual preliminary injunctions. For reasons that follow, we find that we do not have jurisdiction to consider this assignment of error.

On January 23, 2018, Ave Maria filed a rule for preliminary injunction, naming Joseph, Rose, and their daughter as defendants-in-rule.[19] In a subsequent reconventional demand, Joseph and Rose's daughter also requested the issuance of a preliminary injunction. A hearing was held on September 19, 2018, and a judgment was signed on October 10, 2018, granting mutual preliminary injunctions which affected all the parties.

---

[18] Sheila, the plaintiff in the companion case, did not appeal the issuance of the mutual preliminary injunctions. Likewise, Ave Maria has not appealed the issuance of the mutual preliminary injunctions.

[19] Sheila filed a multitude of exceptions to Ave Maria's rule for preliminary injunction. In oral argument at the hearing on the rule for preliminary injunction, the Broussards argued that they, too, filed exceptions. Whether because we were presented with a designated record or otherwise, those exceptions do not appear in the record and counsel for the Broussards has not specified those exceptions in her brief.

Louisiana Code of Civil Procedure Article 3612(C) provides for a fifteen-day period "from the date of the order or judgment" to appeal the issuance of the preliminary injunction. Further, "[a]n appeal is taken by obtaining an order therefor, *within the delay allowed,* from the court which rendered judgment." La.Code Civ.P. art. 2121 (emphasis added). The trial court granted the preliminary injunction on September 19, 2018, in open court and signed a formal judgment on October 10, 2018. The Broussard had fifteen days from that latter date to file a motion for appeal under the express provisions of La.Code Civ.P. art. 3612. No appeal of that order was taken within that period of time. Thus, we are without jurisdiction to consider the trial court's granting of the preliminary injunction. *Billedeaux Hearing Ctr., L.L.C. v. Urban-Kingston*, 15-653 (La.App. 3 Cir. 1/13/16), 182 So.3d 1280.

## DISPOSITION

For the foregoing reasons, we reverse the judgment of the trial court which held that Rose K. Broussard as curatrix could not maintain an action to revoke a donation made by her husband, Joseph Broussard, to Ave Maria on the grounds that Joseph was prohibited from revoking the donation under the provisions of La.Civ.Code art. 1482. We reverse the trial court's grant of partial summary judgment that the November 1, 2000, donation to Ave Maria was valid and that the donation involved Joseph Broussard's separate property. Lastly, we lack jurisdiction to review the trial court's grant of the mutual preliminary injunctions. Costs of this appeal are assessed one-half to Ave Maria and one-half to Rose Broussard, individually and as curatrix of Joseph Broussard.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**